```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JOYCE EDWARDS,

        Movant,                      MEMORANDUM AND ORDER

    -against-                        Civil Action No.
                                     CV-01-3415(DGT)
UNITED STATES OF AMERICA,

        Respondent.

--------------------------------X
```

Trager, J:

Pro se movant Joyce Edwards ("Edwards") filed this motion pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the motion is denied.

**Background**

Edwards was a teller at the Avenue J branch of the Atlantic Liberty Savings Bank ("the Bank") in Brooklyn, New York. Together with other tellers, managers, and the President of the organization, Edwards engaged in bank fraud by issuing teller's checks, both to her creditors and herself, to pay for her personal expenses. The following information regarding the multiple frauds committed at the Bank are taken from the Presentence Investigation Report ("PSR"), the details of which were accepted by Edwards at sentencing. Tr. of Sentencing, May

23, 2000 ("Sent. Tr.") at 6.  An investigation at the Bank was commenced by the Internal Revenue Service ("IRS") regarding failure to submit Currency Transaction Reports ("CTR") and Suspicious Activity Reports ("SAR").[1]  The investigation revealed that Edwards initially became involved in the scheme when Betty Lane ("Lane"), the branch manager, began having Edwards and two other tellers sign bank checks that were then deposited into accounts created to perpetrate fraud.  After becoming involved in the scheme by co-signing the checks, Edwards and the other tellers began to engage in similar schemes to defraud the Bank.  Some of the tellers involved in the scheme were brazen enough to remove funds directly from their teller's tray without even trying to cover-up the thefts, while all conducted fraud based on the example set by Lane.  While each of the other employees involved in the scheme were aware of the fraudulent activities of the other participants, they did not share in the proceeds of their fellow employees' defalcations.

In order to conceal her activities, Edwards would issue duplicate bankbooks for the accounts of certain customers.  These passbooks were then used to secretively remove funds from the customer accounts to cover the teller's checks that were

---

[1] A bank is required to file a CTR for any transaction or group of transactions conducted by an individual involving currency in excess of $10,000.  A bank is required to file an SAR for any suspicious transaction that may violate federal law.

illegally being issued.  Upon investigation, it was found that Edwards had made unauthorized withdrawals from customer accounts to pay for credit card bills, department store bills, cover day-to-day expenses and to buy a cooperative apartment in Brooklyn, New York.  Additionally, Edwards, with others, made an unauthorized withdrawal in the amount of $50,000, which was invested with Schwab Financial Services in order to recover the money that had been stolen; the money used to create this account, however, did not appreciate and was lost.  All told, Edwards was involved in stealing at least $600,000 in a scheme that, in total, defrauded the Bank of over two million dollars.

Because the fraudulent activities involved many of the same people, the investigation into all responsible parties was conducted simultaneously.  In preparing its case against the defendants, the government requested and received an affidavit of loss from the Bank, which indicated that all of the fraudulent activity at the Bank resulted in a loss of funds over two million dollars.[2]  In preparing its case against Edwards, the government used statements prepared by the Bank to determine the portion of the total amount stolen that was attributable to Edwards.  This was not done on the basis of a percentage of the total loss but

---

[2] The initial affidavit of loss incorrectly indicated a loss of $1,286,928.34.  The government indicated in the Sentencing Transcript from May 23, 2000 that this figure was in error and that the government was waiting for the victim Bank to correct the affidavit and resubmit it.  Sent. Tr. at 4.

was calculated based on Edwards's actual activities.  A letter from the Bank's insurance company, forwarded to the court, indicated that a little over one million dollars was covered by the insurance policy held by the bank.  It is on this document that Edwards bases her belief that the actual loss was less than the two million dollars presented during plea negotiations.  Aff. of Loss, May 23, 2000.  While the insurance company may have only paid a portion of the loss, the number reported by the Bank in its corrected affidavit of loss, as represented by the government at sentencing, is the actual amount stolen and is the proper basis for calculating Edwards's participation.

Edwards pled guilty to conspiracy to commit bank fraud under 18 U.S.C. § 371, and on May 23, 2000, was sentenced to eighteen months' imprisonment, two years of supervised release, restitution in the amount of $600,000, and was ordered to forfeit the apartment bought with the proceeds of the fraud. Sent. Tr. at 10.  Based on Edwards's PSR, prepared by the United States Probation Department, and the affidavit of loss submitted by the victim Bank, the government estimated the loss caused by Edwards to be "at least $600,000." Sent. Tr. at 4.  The restitution amount set during sentencing was based on both the affidavit of loss and the presentence report. Sent. Tr. at 10.  To date, Edwards has satisfied the custodial sentence imposed, completing her prison term and the subsequent period of supervised release.

Edwards filed a petition to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 on May 22, 2001, which is within the one-year limitation set forth by statute. 28 U.S.C. § 2255 (1996). Edwards seeks to collaterally attack her sentence on the ground of ineffective assistance of counsel and she seeks an amendment to the amount of restitution ordered to reflect the reduction in actual loss presented by the bank.

**Discussion**

Edwards is ultimately seeking a reduction in the amount of restitution ordered after pleading guilty to one count of conspiracy to commit bank fraud. In her § 2255 motion, Edwards claims that the amount of restitution should be reduced to approximately $300,000 because of an alleged difference between the actual loss suffered and the loss calculation used during sentencing. This claim fails because § 2255 motions may only be used to challenge custodial orders, not orders of restitution. Kaminski v. United States, 339 F.3d 84, 87 (2d Cir. 2003) (holding that restitution orders that do not restrain liberty are non-custodial). In her § 2255 motion, Edwards also claims that ineffective assistance of counsel resulted in an improper restitution order.[3] This also fails under Kaminski, 339 F.3d at

---

[3] In her motion, Edwards nowhere challenges the custodial portion of her sentence; rather, her entire argument is based on the amount of restitution ordered. Even if she had challenged

5

87, as a challenge that cannot be raised using a § 2255 motion but should have been raised on direct appeal. Even if such a claim could be raised under § 2255, Edwards's claim does not meet the requirements for an ineffective assistance of counsel claim as set forth in Strickland v. Washington, 466 U.S. 668 (1984). Ultimately, Edwards's claims either fail for lack of jurisdiction under § 2255 or, on the merits, fail to overcome the burden of proof required.

**(1)**

**Amendments to Restitution Orders Improper under 28 U.S.C. § 2255**

Edwards's motion is grounded on 28 U.S.C. § 2255, which states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." (Emphasis added). The plain language of the statute clearly indicates that any motion made pursuant to the statute must focus on a claimed right to be released from custody. Therefore, "a petitioner who challenges just the restitution portion of his sentence is

---

the custodial portion of her sentence, that claim would fail under Strickland, as discussed infra.

6

asserting his right to be released from custody only if the restitution order itself amounts to a form of custody." Kaminski, 339 F.3d at 86-87.

Neither Edwards nor the government, in its response to the motion, argued whether the order of restitution was properly challenged under a § 2255 motion in this case. Despite the failure of the parties to raise this concern, nonetheless the plain language of the statute requires that the movant be both in custody (or subject to possible incarceration) and seeking a release therefrom. 28 U.S.C. § 2255. Unless these conditions are met, the statute will not confer jurisdiction.

In Kaminski, the court did not decide the question of whether restitution orders, per se, can ever rise to a level of restraint on liberty such that they can be construed as custodial orders. 339 F.3d at 87. Instead, the court limited its holding to the restitution order at issue in that case, which required monthly payments of the greater of either $100 or 10% of Kaminski's monthly income - conditions which plainly fell short of constituting a restraint on liberty.[4] 339 F.3d at 87.

---

[4] In this case, Edwards owes quite a bit more than Kaminski - she owes $600,000 while Kaminski only owed $21,000. Additionally, Edwards was ordered to pay restitution on the following schedule: twenty-five percent of the first $35,000 earned was to be earmarked for restitution, while thirty-three percent of the next $35,000 and fifty percent of anything earned over $70,000 was also to be earmarked for the restitution order. While this is more drastic than that ordered in Kaminski, the amount owed in restitution must be considered in developing a

7

However, the court in Kaminski, 339 F.3d at 87, did indicate its general agreement with other circuits that have held that restitution orders are non-custodial punishments because they do not severely limit liberty. Id. at 87. See also Smullen v. United States, 94 F.3d 20, 25-26 (1st Cir. 1996) (holding that challenges to restitution orders are not claims to be released from custody sufficient to allow for a proper § 2255 challenge); United States v. Hatten, 167 F.3d 884, 887 (5th Cir. 1999) (same); Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997) (same); United States v. Thiele, 314 F.3d 399, 401 (9th Cir. 2002) (same); United States v. Kramer, 195 F.3d 1129, 1130 (9th Cir. 1999) (same); Blaik v. United States, 161 F.3d 1341, 1342 (11th Cir. 1998) (same). Based on this authority and the agreement expressed by the Kaminski court, the restitution order in this case does not severely limit Edwards's liberty such that her motion can be viewed as challenging a custodial order.[5]

Even if Edwards's claim was not barred by the plain language of the statute, the petition to amend the restitution would fail

---

plan whereby the offender might actually be able to make the victim Bank whole.

[5] The Second Circuit, in Kaminski, outlined a possible exception to the basic principle that restitution orders are not subject to collateral review through a § 2255 petition; where the entire sentence is successfully challenged and the defendant is being re-sentenced in total, the restitution order can then be modified. 339 F.3d at 89 n.3. However, Edwards raises no such challenge to the custodial portion of her sentence.

on the merits as well.[6] Edwards was not assigned a proportional amount of the total loss incurred by the scheme as she suggests, but rather was ordered to repay the loss that she herself caused. On November 22, 1999, a plea hearing was held during which the government described the offense to which Edwards pled guilty; it was during this description that the government indicated that a loss of $600,000 was incurred by the scheme perpetrated by Edwards. At no point did Edwards object to the description, including the government's calculation of a $600,000 loss. Plea Transcript ("Plea Tr.") at 14. Subsequent to this description, Edwards accepted responsibility for the offense as described and pled guilty. Plea Tr. at 22, 27. It is important to note that Edwards's counsel raised her contention that she had only amassed $300,000 in profit from the scheme. Sent. Tr. at 6. However, Edwards is not liable just for the amount that she profited; rather, Edwards is liable for the total loss sustained by the victim Bank. Therefore, she remains responsible to pay

---

[6] It is important to note that there is a significant difference between Edwards's challenge to the restitution ordered and a hypothetical challenge to the loss amount insofar as it affected the length of her custodial punishment. For this type of crime, the base level offense is increased as the total amount stolen increases. Had Edwards challenged the custodial portion of her sentence, calculating the sentencing offense level would have required an assessment of and allowed for a challenge to the amount stolen. However, because her challenge is focused only on the amount of restitution ordered and does not challenge the custodial portion of the sentence in any way, this analysis neither applies nor allows for review of the restitution amount.

9

restitution for the damage she herself caused in the amount of $600,000.

Accordingly, Edwards's § 2255 motion fails on the merits.

**(2)**

**Ineffective Assistance of Counsel**

Edwards also claims that her case was unfairly prejudiced because she received ineffective assistance of counsel. Edwards's petition does not describe how her counsel was ineffective but merely lists the attorneys she believes were ineffective and refers to the restitution claim discussed above.[7] In order to fully consider her claim, it is assumed that the ineffective assistance of counsel claim relates solely to the amount of restitution ordered, which Edwards believes was in error. However, merely couching the restitution issue as one based on ineffective assistance of counsel does not change the

---

[7] In Strickland, 466 U.S. at 690, the Supreme Court held that claims of ineffective assistance of counsel "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Because Edwards' motion fails to do this, by merely listing those of her counsel she believes were ineffective, it would not be improper to deny the claim as incomplete. However, based on the wording of the motion and the part of the sentence that is being challenged, it is clear that although she does not specifically indicate the reason for claiming ineffective assistance of counsel, it can be reasonably assumed that it is based on the allegedly improper restitution order. There is no other information provided in her § 2255 motion that would allow for any alternative challenge and none will be considered.

above analysis that bars the claim from being brought because it challenges a non-custodial order. See Thiele, 314 F.3d at 402 (holding that using a claim of ineffective assistance of counsel does not make a challenge to a restitution order any more viable).

Even if an ineffective assistance of counsel claim could be based on the amount of a restitution order, Edwards's claim does not meet the requirements for a viable ineffective assistance of counsel claim as set forth in Strickland, 466 U.S. at 668. A claim of ineffective assistance of counsel finds its origin in the sixth amendment; the sixth amendment right to counsel does not merely guarantee a right to have counsel present but that the attorney present must "play[] the role necessary to ensure that the trial is fair." Id. at 685. Using this overarching idea as a guide, the Supreme Court elaborated that an ineffective assistance of counsel claim must demonstrate the following to be successful: (1) the errors committed by counsel must be unreasonable and ineffective as based on professional norms and (2) the errors must have actually prejudiced the defense. Id. at 687-88. Unless both of these are proven, the claim of ineffective assistance of counsel is defeated.

The first prong of the Strickland test requires that any errors committed must be objectively unreasonable given professional norms. Id. at 687-88. The Supreme Court indicated

that, in deciding claims of this type, the possibly distorting effect of hindsight requires "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. An examination of the record of the plea hearing demonstrates that counsel's actions fell well within what is objectively reasonable conduct. Throughout the proceeding both Edwards and her attorney indicated that Edwards's attorney had informed Edwards about sentencing, including that the plea did not automatically guarantee her a certain sentence and that the amount of restitution would be set by the sentencing judge alone. Plea Tr. at 15-17. In addition, the attorney representing Edwards at sentencing raised Edwards's contention that she had only profited $300,000, but this figure was rejected in favor of the amount that compensated the Bank for its loss. Sent. Tr. at 6. Based on these recitations during the hearings, it is apparent that, at a minimum, Edwards's counsels did not take any action that could be considered outside the broad swath of professional conduct and at most, fully informed Edwards of her rights and aided Edwards in making a decision that best protected her interests.

The second prong of the Strickland test requires that the errors alleged must have actually prejudiced the defense. 466 U.S. at 687-88. The Supreme Court elaborated on this standard, stating that "[t]he defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Assuming, arguendo, that there was an objectively unreasonable action satisfying the first prong, there is no indication that Edwards would have not pled guilty to the offense charged.[8]  Indeed, Edwards pled guilty to only one count of a multi-count indictment and the other charges brought against her were dropped in exchange for her plea. This benefitted Edwards by reducing her exposure to charges that could have resulted in additional jail time, fines and other penalties. Additionally, Edwards indicated that she understood that, regardless of what had been discussed in terms of sentencing, her sentence would be decided by the sentencing judge and that no guarantee could be given regarding any portion of the sentence. Plea Tr. at 20-21.

---

[8] On the one hand, the amount of the loss that was covered by insurance was represented to be just over one million dollars at sentencing, although at the time of the plea, the total loss was estimated at over two million dollars. On the other hand, Edwards claimed that she was surprised at sentencing that she was being held responsible for so much of that loss. Even so, this clearly would not have affected her decision to plead guilty. In this regard, it is important to note that regardless of whether Edwards's estimation of loss or the government's is used, it is unlikely that Edwards will be able to repay that which is ordered. Edwards has completed only one year of college and is now a convicted felon, which limits the value of her past experience as a bank teller. The net effect is that any amount ordered would likely be an amount that Edwards will not be able to completely repay. While ability to pay is not a factor in her claim, it does suggest that the amount of restitution ordered would not have substantially affected her decision to plead guilty.

Ultimately, Edwards is not able to demonstrate any prejudice in the defense such that the outcome would have been different and the second part of the <u>Strickland</u> test is not met.

Accordingly, Edwards's § 2255 motion fails for the reasons stated above.

**Conclusion**

For the aforementioned reasons, Edwards's petition is denied.

Dated:     Brooklyn, New York
           August 10, 2007

                                    SO ORDERED:


                                    ____/s/_____
                                    David G. Trager
                                    United States District Judge